UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SHAWN BLOUNT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 3:16-CV-821 PPS |
| | ) | |
| | ) | |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION AND ORDER

Shawn Blount, a prisoner without a lawyer, filed a habeas corpus petition challenging his conviction at a jury trial for possession of a firearm by a serious violent felon. Blount was later sentenced to twelve years of incarceration.

FACTUAL BACKGROUND

In deciding this habeas petition, I must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here are the facts as summarized by the Supreme Court of Indiana:

> In November 2012, Detective Terry Smith of the Indianapolis Metropolitan Police Department was in an unmarked vehicle conducting surveillance at the Best Inn at 4505 South Harding Street due to several complaints of prostitution and open air narcotics activity in the area. Shortly before 11:00 a.m., Detective Smith saw two black males exit the motel. One man was wearing a grey sweatshirt, and the other man was wearing a black hoodie. The man in the black hoodie continued down a sidewalk while the man in the grey sweatshirt waved to someone behind Detective Smith's vehicle and walked in that

1

direction. A woman walked along the side of Detective Smith's vehicle and met up with the man in the grey sweatshirt, and the two then went down the same path as the man in the black hoodie.

Five to ten seconds later, Detective Smith heard yelling. He saw the woman and the man in the grey sweatshirt quickly walking away from a corner of the building and looking back a couple of times. He then saw the man in the black hoodie step out with his arm extended downward at a forty-five degree angle. Detective Smith was twenty-five to thirty-five yards from the corner, and his view of the man in the black hoodie was somewhat obscured as he observed him through a chain-link fence. Further, Detective Smith saw only the outline of the man's body due to brush and weeds around the chain-link fence, but he had a clear view from the man's chest up. He saw a muzzle flash and heard a gunshot, though he did not actually see a gun.

Detective Nicholas Andrews, who was conducting surveillance just south of the parking lot at a different motel, called Detective Smith and confirmed there was a gunshot. They met up, put on their tactical vests, and ran into the motel. By that time, 911 calls had come in saying that the suspect had run into Room 150. As they approached that room, a woman Detective Smith knew as Ricky Brock exited it and ran up the stairs. The detectives found no one in Room 150.

They then followed Brock's path up the stairs, and someone directed them to Room 240. They knocked and announced themselves, and although they heard a lot of commotion in the room, no one answered the door. The detectives forced entry and found Brock, her five-year-old son, and two other females. Brock provided them with the nickname of the person she believed fired the weapon, "Big D." Her son named the same person.

The search for the suspect was unsuccessful. Detective Smith went to the location where he saw the gun being fired and recovered a spent round from a hole in the ground.

During the investigation that day, Detective Andrews was able to obtain an actual name, Shawn Blount, from the nickname Brock and her son had provided. He created a photo array and showed it to Detective Smith, who identified Blount's picture as the person who

fired the gun. A warrant was issued, and Blount was arrested about a month later. A firearm was never recovered.

The State charged Blount with Class B felony possession of a firearm by a serious violent felon. At a jury trial, Detectives Smith and Andrews testified on behalf of the State. Over defense objection, Detective Smith testified that Brock and her son provided him with the nickname of the person they believed fired the gun. Blount testified in his own defense that a man named "Bigs," who was shorter than him but stocky, was also at the scene, was angry over a debt, and fired at Blount's feet from half an arm's length away. On cross examination, he acknowledged that Brock was his girlfriend.

*Blount v. State*, 4 N.E.3d 787 (Ind. Ct. App. 2014); ECF 6-5 at 3-5.

## Governing Standards

Federal habeas review serves as an important error-correction tool to help ensure the proper functioning of the criminal justice system. But the available relief is very limited. "Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted). Habeas relief can only be granted in one of two ways: if it is shown that the adjudication of the claim by the state court resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or if the state court decision was based "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

This is a demanding standard that has been described by the Supreme Court as being "intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings . . . of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 135 S. Ct. at 1376 (quotation marks and citations omitted). What this means is that to succeed on a habeas claim the petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

With these standards in mind I will turn to the various claims for relief asserted by Mr. Blount.

## Discussion

Blount argues that he is entitled to habeas corpus relief, alleging that it was an error to admit Detective Smith's hearsay testimony and that the charging information did not

4

provide him with sufficient notice to prepare a defense. The respondent argues that Blount's claims are not a basis for habeas relief because they are questions of State law and that, to the extent that Blount alleges that his federal constitutional rights were violated, he did not inform the State courts of the federal underpinnings of his claims. Nevertheless, I will assume without deciding that Blount properly exhausted his claims and consider them on the merits.[1]

*Hearsay Testimony*

Blount claims that the State court made an objectively unreasonable decision by admitting hearsay statements during Detective Terry Smith's testimony and by later finding that the admission of those statements constituted harmless error. On appeal, Blount argued that the hearsay testimony was highly prejudicial because it established the identity of the person holding the firearm but was otherwise irrelevant.

"The general rule [is] that evidentiary questions are not subject to review by a federal court in a habeas corpus proceeding by a state prisoner unless there is an error of such magnitude as to deny fundamental fairness." *U. S. ex rel. Bibbs v. Twomey*, 506 F.2d 1220, 1223 (7th Cir. 1974). "State court evidentiary rulings only implicate the Due Process Clause when evidence is so extremely unfair that its admission violates fundamental conceptions of justice." *Richardson v. Lemke*, 745 F.3d 258, 275 (7th Cir. 2014). "When engaging in an evidentiary due process analysis, we often simplify the

---

[1] Notably, federal courts have the discretion to consider claims for habeas relief under certain circumstances even if such claims are procedurally barred. 28 U.S.C. § 2254(b)(2).

inquiry by asking whether the probative value of the evidence is greatly outweighed by the prejudice to the accused." *Id.*

At trial, Detective Smith testified that he observed Blount and two other individuals leave a hotel room and walk around a corner on the sidewalk. Trial Tr. 49-53. A few seconds later, Detective Smith heard yelling and saw the two other individuals walk away from Blount. *Id.* at 54. He then saw Blount step out from behind the corner, heard a gunshot, and saw a muzzle flash. *Id.* at 56-57. At this time, Detective Smith was about twenty-five to thirty-five yards away and saw no other individuals near Blount's location. *Id.* at 61-62, 67, 79. He had a clear view of Blount from the chest up and saw Blount's arm at a downward angle. *Id.* He later discovered a bullet hole in the ground in a location consistent with Blount's location and posture when the gunshot occurred. *Id.* at 78-79. However, he did not see the gun or Blount's lower body because fencing and foliage obstructed his view. *Id.* at 103.

Detective Smith also testified that, as he searched the rooms of the hotel, two individuals told him that they believed that an individual nicknamed Big D had fired the gun. *Id.* at 73-76. Detective Nicholas Andrews found a legal name and a photograph associated with the Big D nickname and created a photograph array. *Id.* at 86-88. When presented with this photograph array, Detective Smith identified Blount. *Id.*

Blount also testified at trial; he conceded that he was present at the time and location of the gunshot but accused another individual named Bigs of firing the gun. *Id.* at 171, 185. After the gun was fired, Blount went into Room 150 and immediately left

6

the room through a separate exit. *Id.* at 171. When the detectives interviewed Blount, he gave the location of Bigs' neighborhood, indicating that Bigs had a weight set on the front porch, and provided a description of Bigs' vehicle. *Id.* at 195-96.

Detective Andrews testified that 911 calls indicated that the shooter had run into Room 150. *Id.* at 146-48. However, when the detectives searched Room 150, the room was vacant. *Id.* He further testified that he attempted to locate Bigs by interviewing individuals at the hotel, consulting with other law enforcement officials, reviewing databases, and searching the neighborhood for Bigs' residence and gold Denali. *Id.* at 202-05. However, he could not locate the residence or verify that Bigs existed. *Id.*

On direct appeal, Blount argued that Detective Smith's testimony that two individuals told him that they believed that an individual nicknamed Big D shot the gun was inadmissible hearsay. ECF 6-3 at 9-14. The Court of Appeals of Indiana found that the hearsay should not have been admitted. ECF 6-5. The appellate court further found that the error was not harmless because the hearsay testimony added credibility to Detective Smith's identification of Blount as a shooter. *Id.* However, on transfer, the Indiana Supreme Court found that the error was harmless considering Detective Smith's unequivocal identification. ECF 6-9 at 11-12. The Indiana Supreme Court also noted that Blount's testimony that he ran into Room 150 was consistent with the 911 callers' reports; and that Detective Andrews had conducted a substantial but ultimately unsuccessful investigation to locate Bigs. *Id.*

After reviewing the record, I cannot find that the appellate court's determination regarding the hearsay testimony was objectively unreasonable. Though the probative value of the hearsay testimony was minimal, the totality of the evidence introduced at trial indicates that the prejudicial effect of the testimony was also minimal. On appeal, Blount's primary argument was that the hearsay testimony bolstered the credibility of Detective Smith's identification. ECF 6-3 at 13-14. However, there is nothing to suggest that Detective Smith's testimony was particularly unreliable or that there were substantial questions regarding the detective's credibility. Blount even conceded that he was present at the time and location of the gun shot. What's more, as highlighted by the Indiana Supreme Court, Blount testified that he ran into Room 150 after the gun shot, which was consistent with the 911 reports that the shooter had ran into Room 150. And Detective Andrews' testimony regarding his fruitless search for Bigs undermined Blount's identification of Bigs as the shooter. Because the prejudicial effect of the hearsay statement was minimal, I cannot conclude that its prejudicial effect greatly outweighed its probative value or that its admission rendered the trial fundamentally unfair.

In sum, the Supreme Court's hearsay decision was not an unreasonable application of clearly established federal law; nor was it based on an unreasonable determination of the facts. Indeed, I don't believe it was an error at all. Therefore, Blount's claim regarding the admission of Detective Smith's hearsay testimony is not a basis for habeas relief.

*Charging Information*

Blount argues that the State courts made an unreasonable determination that there was not a material variance between the charging information and the evidence at trial. He argues that this allowed the jury to convict him of possessing a firearm on a date not alleged in the charging information.

"[S]ufficiency of a charging information generally is not a proper subject for habeas review." *Tague v. Richards*, 3 F.3d 1133, 1141 (7th Cir. 1993). However, "the due process clause requires that a criminal defendant receive notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge." *Id.* "In other words, a criminal defendant must receive adequate notice of the charges against him so that he may defend himself against those charges." *Id.*

> The charging information reads:
>
> COUNT I
>
> SHAWN BLOUNT, being a serious violent felon, that is; having been convicted of Attempted Robbery in Marion County Superior Court, Criminal Division Room Three under cause number 49G030604FC072288 on August 16, 2006, did on or about November 1, 2012, knowingly or intentionally possess a firearm, that is: a handgun.

Appeal App. 29.

At trial, the detectives testified that they interviewed Blount about a month after the crime. Tr. 88-90, 153-55. They testified that Blount denied firing the gun but stated that he had held the gun for Bigs during the week of November 1, 2012. *Id.* When Blount testified, he could not recall whether he held the gun that week but conceded

9

that he might have done so. *Id.* at 194. During closing arguments, the prosecution argued:

> Now the defendant, when he took that stand today, he admitted possessing that firearm. He told you – or he told the detectives that day you heard from the detectives that he possessed that firearm for Bigs. That's what he said. It was Bigs' firearm and I possessed it for Bigs. I put it up for him. I did it often is what he said. And he even said that week I probably did it. Well, there's a problem with that ladies and gentleman. And the first problem is going back to the first point: the defendant is never allowed to possess a firearm. It is illegal for him. Any time he possesses a firearm in the State of Indiana he's breaking the law. He's never allowed to do that. When he got on the stand and told you, I do that all the time. And he wants to argue about the dates. I didn't do it on November 1. That particular day, I didn't do it. Well, when you get back into the jury room to deliberate, you are going to see the charging information. And the date on there says on or about November 1, 2012. It doesn't just say on November 1, 2012. It says on or about. But it's the defendant's own admission even if you want to take and set aside the whole Mr. Bigs thing. Put all that aside, he said that week I handled the gun. That would be on or about. The on or about is inclusive to the days around them. So the defendant admitted to breaking this crime – committing this crime, ladies and gentlemen.

*Id.* at 233-35. During jury deliberations, the jury asked for a definition of the parameters of the word "about" in the phrase "on or about." *Id.* at 253-60. However, the trial court decided not to answer the jury's question. *Id.*

On direct appeal, Blount argued that the charging information and the probable cause affidavit notified him of his need to defend only a crime that occurred on November 1, 2012, and that he was misled in the preparation of his defense. ECF 6-3 at 15-23. The Indiana Supreme Court rejected this claim, reasoning that "charging information must only state the date of the offense with sufficient particularity to show

10

that the offense was committed within the period of limitations applicable to that offense." ECF 6-9 at 13. The court also stated, "Where, as here, time is not an element of the offense, the State is not required to prove the offense occurred on the precise date alleged, and its presentation of evidence is not limited to events on that date." *Id.* The court concluded by noting that the evidence at trial demonstrated the allegations in the charging information; that Blount possessed a firearm "on or about" November 1, 2012. *Id.* at 13-14.

After reviewing the record, I cannot conclude that the State court's determination regarding the charging information was objectively unreasonable. "[W]here an indictment alleges that an offense occurred 'on or about' a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date and cannot make the requisite showing of prejudice based simply on the fact that the government has failed to prove a specific date." *United States v. Blanchard*, 542 F.3d 1133, 1143 (7th Cir. 2008); *United States v. Smith*, 668 F.3d 427, 432 (7th Cir. 2012). Blount argues that he was misled by the probable cause affidavit, which alleged that Blount possessed a firearm on November 1, 2012. However, considering the context of the probable cause affidavit, Blount should not have been misled; the probable cause affidavit was drafted five days after the crime, and the prosecution did not obtain evidence of further firearm possession until Blount was interviewed a few weeks later. Appeal App. 23-28. The prosecution formally disclosed the interview on December 6, 2012, and the trial was conducted in March 2013, leaving Blount with ample time to prepare his defense. *Id.* at

13, 38. Therefore, Blount's claim that he did not receive sufficient notice of the charges against him is not a basis for habeas relief.

### Certificate of Appealability

Pursuant to Section 2254 Habeas Corpus Rule 11, I must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Blount to proceed further. For the same reasons, he may not appeal *in forma pauperis* because an appeal could not be taken in good faith.

Accordingly, the court DENIES the habeas corpus petition; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; DENIES leave to appeal *in forma pauperis*; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on April 24, 2018.

/s/ Philip P. Simon
Judge
United States District Court